1   **NICHOLAS W. HORNBERGER, BAR NO. 53776**
**NATHAN VERBISCAR-BROWN, BAR NO. 286377**
2   **HORNBERGER LAW CORPORATION**
3   633 W. Fifth Street, 28th Floor
Los Angeles, California 90071
4   Tel (213) 488-1655
Fax (213) 488-1255
5
Attorneys for Plaintiff
6   AIMEE LAMBERT and the CLASS

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   AIMEE LAMBERT, an individual, on behalf    Case No. 2:14-cv-00514-MCE-KJN
     of herself and all others similarly situated;
12                                               **CLASS ACTION**
              Plaintiff,
13                                               **MEMORANDUM OF POINTS AND**
     vs.                                         **AUTHORITIES IN SUPPORT OF**
14                                               *UNOPPOSED* **MOTION FOR**
                                                 **ATTORNEYS' FEES, COSTS AND**
15   BUTH-NA-BODHAIGE, INC., a Delaware          **INCENTIVE AWARD**
     corporation; RAZE MEDIA, INC., a Texas
16   corporation; and DOES 1 -50, inclusive      Date:      November 12, 2015
                                                 Time:      2:00 p.m.
17            Defendants.                         Courtroom: 7
                                                 Judge:     The Hon. Morrison C. England
18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   ALLEGATIONS AND PROCEDURAL HISTORY ....................................... 2

III.  CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS WELL SUPPORTED .................................................................................. 5

      A.    Application of the Percentage-of-the-Fund Method is Warranted ............................ 6

      B.    The Percentage-of-the-Fund Analysis Supports Class Counsel's Fee Request ........ 8

            1.    *Class Counsel Have Obtained an Excellent Result* ........................................ 9

            2.    *The Excellent Results Achieved by Class Counsel Were the Product of Litigation* ........................................................ 11

            3.    *Class Counsel Have Faced Substantial Risk of Non-Payment* .................. 13

            4.    *Fees in Similar Actions* ........................................................ 13

      C.    The Lodestar-Multiplier Cross-Check Confirms the Requested Attorneys' Fee is Reasonable ........................................................ 14

            1.    *Class Counsel's Lodestar is Reasonable* ...................................... 15

            2.    *A Multiplier is Warranted* ........................................................ 17

                  i.     Class Counsel Achieved Exceptional Results for the Class............ 17

                  ii.    The Contingent Nature of This Case.................................. 17

                  iii.   The Novelty and Difficulty of Questions Involved........................ 18

                  iv.    The Experience, Reputation and Ability of Counsel...................... 18

                  v.     Similar (and Greater) Multipliers Have Been Awarded in TCPA Class Actions in the Ninth Circuit ...................................... 19

IV.   THE PAYMENT OF COSTS IS FAIR AND REASONABLE ......................... 19

      A.    Class Counsel's Expenses Were Reasonably Incurred ........................................... 20

V.    THE REQUESTED INCENTIVE AWARD FOR PLAINTIFFS IS REASONABLE ...... 20

VI.   THE CLASS RESPONSE TO DATE SUPPORTS APPROVAL OF THE FEE............... 22

VII.  CONCLUSION ........................................................................................ 22

**TABLE OF CONTENTS**

# **TABLE OF AUTHORITIES**

<u>Federal Cases</u>

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
     1991 WL 427893 (S.D. Cal. May 6, 1991) ............................................................ 8

*Baird v. Sabre Inc.*,
     2014 WL 320205 (C.D. Cal. 2014) ...................................................................... 3

*Ballen v. City of Redmond*,
     466 F.3d 736 (9th Cir. 2006) ............................................................................. 15

*Boeing Co. v. Van Gemert*,
     444 U.S. 472 (1980) .............................................................................. 5, 6, 7

*Castaneda v. Burger King Corp.*,
     2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010) ...................................... 8

*Cf. Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.*,
     2009 WL 2602200 (D. N.J. 2009) .................................................................. 9, 11

*Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*,
     19 F.3d 1291 (9th Cir. 1994) .............................................................................. 8

*Faigman v. AT&T Mobility, LLC*,
     2011 WL 672648 (N.D. Cal. 2011) .................................................................... 21

*Fischel v. Equitable Life. Asur. Soc'y.*,
     307 F.3d 997 (9th Cir. 2002) ............................................................................. 14

*Gomez v. Campbell-Ewald Co.*,
     768 F.3d 871 (9th Cir. 2014) ............................................................................... 5

*Hanlon v. Chrysler Group*,
     150 F.3d 1011 (9th Cir. 1998) ............................................................... 5, 14, 15

*Hensley v. Eckerhart*,
     461 U.S. 424 (1983) ........................................................................................... 9

**TABLE OF AUTHORITIES**

*Hopkins v. Hanesbrands, Inc.,*
    2009 WL 928133 (N.D. Cal. 2009)................................................................................. 21

*In re Corel Corp. Inc. Sec. Litig.,*
    293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................................... 10

*In re Crazy Eddie Sec. Litig.,*
    824 F. Supp. 320 (E.D.N.Y. 1993)............................................................................... 10

*In re Critical Path, Inc.,*
    2002 WL 32627559 (N.D. Cal. June 18, 2002) ............................................................ 13

*In re Gen. Instruments Sec. Litig.,*
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................................... 10

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................................... 20

*In re M.D.C. Holdings Sec. Litig.,*
    1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ................................................................. 8

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................................ 19

*In re Medical X-Ray Film Antitrust Litig.,*
    1998 WL 661515 (E.D.N.Y. 1998)............................................................................... 10

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000)................................................................................... 8, 13

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010)......................................................................................... 1

*In re Merry-Go-Round Enterprises, Inc.,*
    244 B.R. 327 (Bankr. D. Md. 2000)............................................................................. 15

*In re Omnivision Techs., Inc.,*
    2007 WL 4293467 (N.D. Cal. 2007)............................................................................. 8

**TABLE OF AUTHORITIES**

*In re Public Serv. Co. of New Mexico,*
>1992 WL 278452 (S.D. Cal. July 28, 1992) ................................................ 8

*In re Rite Aid Corp. Sec. Litig.,*
>146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................... 15

*In re Rite Aid Corp. Sec. Litig.,*
>362 F. Supp. 2d 587 (E.D. Pa. 2005) ...................................................... 15

*In re RJR Nabisco, Inc. Sec. Litig.,*
>1992 WL 210138 (S.D.N.Y. 1992) ........................................................ 15

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,*
>27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012) ................................................ 3

*In re Washington Public Power Supply System Sec. Litig.,*
>19 F.3d 1291 (9th Cir. 1994) ............................................................... 6

*Kerr v. Screen Extras Guild, Inc.,*
>526 F.2d 67 (9th Cir. 1975) ......................................................... 15, 17

*Kramer v. Autobytel, Inc.,*
>759 F. Supp. 2d 1165 (N.D. Cal. 2010) .......................................... 2, 14, 19

*Linney v. Cellular Alaska P'ship,*
>151 F.3d 1234 (9th Cir. 1998) ..................................................... 10, 13

*Maier v. J.C. Penney Corp., Inc.,*
>2013 WL 3006415 (S.D. Cal. 2013) ....................................................... 3

*Mills v. Electric Auto-Lite Co.,*
>396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) .................................. 19

*Moreno v. City of Sacramento,*
>534 F.3d 1106 (9th Cir. 2008) ............................................................ 16

*Paul, Johnson, Alston & Hunt v. Graulty,*
>886 F.2d 268 (9th Cir. 1989) ........................................................... 7, 8

- iv -

**TABLE OF AUTHORITIES**

*Pelletz v. Weyerhaeuser Co.*,

     255 F.R.D. 537 (W.D. Wash. 2009) ............................................................ 11

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,

     779 F.3d 934 (9th Cir. 2015) ................................................................... 6

*Satterfield v. Simon & Schuster, Inc.*,

     569 F. 3d 946 (9th Cir. 2009) ............................................................. 2, 3

*Six Mexican Workers v. Ariz. Citrus Growers*,

     904 F.2d 1301 (9th Cir. 1990) ................................................................ 8

*Staton v. Boeing Co.*,

     327 F.3d 938 (9th Cir. 2003) ................................................................. 5

*Steiner v. Am. Broad. Co.*,

     248 Fed. Appx. 780 (9th Cir. 2007) ....................................................... 15

*Sutton v. Bernard*,

     504 F.3d 688 (7th Cir. 2007) ................................................................. 7

*Torrisi v. Tucson Elec. Power Co.*,

     8 F.3d 1370 (9th Cir. 1993) ................................................................... 8

*Vincent v. Hughes Air West. Inc.*,

     557 F.2d 759 (9th Cir. 1977) ................................................................. 6

*Vizcaino v. Microsoft Corp.*,

     290 F.3d 1043 (9th Cir. 2002) ...................................................... passim

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.*,

     2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007) .................................. 21

*Wright v. Linkus Enter., Inc.*,

     259 F.R.D. 468 (E.D. Cal. 2009) ................................................. 8, 9, 12

State Cases

*Cellphone Termination Fee Cases*,

     186 Cal.App.4th 1380 (2010) .............................................................. 20

**TABLE OF AUTHORITIES**

*Earley v. Superior Court,*

79 Cal.App.4th 1420 (2000).............................................................. 21

*Lealao v. Beneficial California, Inc.,*

82 Cal.App.4th 19 (2000)............................................................... 12

Statutes

47 U.S.C. § 227 ..................................................................................... 2

Miscellaneous Authorities

*Manual for Complex Litigation,*

§ 12.121 (4th ed. 2004) ................................................................ 14

*Manual for Complex Litigation,*

§ 14.122 (4th ed. 2004) ........................................................... 15, 17

*Manual for Complex Litigation,*

§ 27.71 (4th ed. 2004) .................................................................. 9

*Theodore Eisenberg & Geoffrey P. Millery, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008,*

7 Journal of Empirical Legal Studies 248 (2010) ............................ 7

TABLE OF AUTHORITIES

## I.     INTRODUCTION

Hornberger Law Corporation (hereinafter "Class Counsel") negotiated a settlement in this matter on behalf of the Settlement Class that resulted in a common fund of approximately $7,335,000.00 (the "Settlement Fund").  This is an excellent result for the Settlement Class in that it provides for an actual monetary benefit to be directly delivered to each Settlement Class member, and thus, provides for as close to a 100% participation rate as possible under the circumstances. Indeed, the fact that Settlement Class members are not required to do anything to receive a settlement benefit in this case distinguishes this Settlement from a number of others brought under the Telephone Consumer Protection Act ("TCPA") that have been approved by District Courts in the Ninth Circuit.

For its efforts in achieving this result, Class Counsel seeks a fee and cost award of $1,600,00.00[1] which represents approximately 21.8% percent of the Settlement Fund, and a $5,000 incentive award to Plaintiff for the services she has rendered to the Class by stepping forward to bring this case and actively participating in its successful litigation.[2]

Class Counsel's request is squarely supported by the percentage-of-the-fund method of calculating attorneys' fees applicable to common fund cases, like this one, under Ninth Circuit authority. This fee and cost request, while not insubstantial, is significantly less than the Ninth Circuit benchmark, which provides for recovery out of a common fund of 25% or more, plus costs. The total fee and cost request here represents slightly less than 22% of the total Settlement Fund, and includes costs. Class Counsel's fee request is appropriate in light of the extraordinary result Class Counsel achieved for the Class after hard fought litigation, which includes a total payment by Buth-Na-Bodhaige, Inc. d/b/a The Body Shop (hereinafter "TBS") of up to $7,335,000.00.  Class Counsel's request for reimbursement of their out-of-pocket costs (subsumed within the requested

---

[1] Class Counsel seeks an award of $1,593,605.70 in attorneys' fees and $6,394.30 in out-of-pocket costs for a total award of attorneys' fees and costs of $1,600,000.00.

[2] Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and best practices, a copy of this brief will be uploaded to the settlement website.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1   amount, and not in addition to it), and for an incentive award to Plaintiff for her service to the

2   Class, are similarly supported by Ninth Circuit authority and the facts of this case.

3          For these reasons, and as detailed below, Class Counsel respectfully request that the Court

4   grant their Motion and award fees and costs in full, as well as payment of the incentive award.

5   **II.      ALLEGATIONS AND PROCEDURAL HISTORY**

6          The TCPA was enacted to "protect the privacy interests of residential telephone subscribers

7   by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate

8   interstate commerce by restricting certain uses of facsimile machines and automatic dialers."

9   *Satterfield v. Simon & Schuster, Inc.,* 569 F. 3d 946, 954 (9th Cir. 2009) (quoting S.Rep. No. 102–

10  178, at 1, 1991 U.S.C.C.A.N. 1968 (1991)).  Whether a plaintiff can maintain a claim under the

11  TCPA turns on the statutory language of 47 U.S.C. § 227(b)(1)(A)(iii).  *Kramer v. Autobytel, Inc.,*

12  759 F. Supp. 2d 1165, 1169 (N.D. Cal. 2010).  Section 227 of the TCPA, entitled "Restrictions on

13  use of telephone equipment," provides as follows:

14          (a) Definitions. As used in this section—

15              (1)  The term "automatic telephone dialing system" means equipment which has the
                    capacity—

16                  (A)  to store or produce telephone numbers to be called, using a random or
                         sequential number generator; and

17                  (B)  to dial such numbers.

18          (b)  Restrictions on use of automated telephone equipment.

19              (1)  Prohibitions. It shall be unlawful for any person within the United States, or any
                    person outside the United States if the recipient is within the United States—
                    (A) to make any call (other than a call made for emergency purposes or made with

20                      the prior express consent of the called party) using any automatic telephone
                        dialing system or an artificial or prerecorded voice—

21                      ...

22                  (iii)  to any telephone number assigned to a paging service, cellular telephone
                           service, specialized mobile radio service, or other radio common carrier

23                         service, or any service for which the called party is charged for the call.

24  *Kramer*, 759 F. Supp. 2d at 1169 (*quoting* 47 U.S.C. § 227).  Among other things, the TCPA makes

25  it unlawful for any person to make any call (other than a call made for emergency purposes or

26  made with the prior express consent of the called party) using any automatic telephone dialing

27

28
**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1  system to any cellular telephone number.  *Baird v. Sabre Inc.*, 2014 WL 320205, at *1 (C.D. Cal.

2  2014).

3       A text message is a call within the meaning of the act.  *Id.*; *Maier v. J.C. Penney Corp.,*

4  *Inc.*, 2013 WL 3006415 (S.D. Cal. 2013) (*citing Satterfield v. Simon & Schuster, Inc.,* 569 F.3d

5  946, 952 (9th Cir.2009)) ("The Ninth Circuit has established that text messages (also referred to as

6  SMS) are encompassed within the term 'call' as used in the TCPA and are therefore subject to its

7  restrictions.").

8       On October 16, 2013, the Federal Communications Committee's (the "FCC") February

9  2012 Rule Making, interpreting the TCPA, went into effect.  *See In re Rules and Regulations*

10  *Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 27 F.C.C.R.

11  1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (F.C.C. Feb. 15, 2012) ("The 2012 Rule Making").  The

12  2012 Rule Making mandated that from October 16, 2013 going forward companies could no longer

13  rely on mere oral consent to send their text message solicitations to customers.  Instead, the FCC

14  required that as of that date companies needed to obtain "prior express written consent" before

15  sending text message solicitations to their customers.  *See* 2012 Rule Making at ¶18.  The FCC

16  could not have been more clear – "[w]e believe that requiring prior written consent will better

17  protect consumer privacy because such consent requires conspicuous action by the consumer –

18  providing permission in writing – to authorize autodialed or prerecorded telemarketing calls, and

19  will reduce the chance of consumer confusion in responding orally to a telemarketer's consent

20  request."  *Id.* at ¶24.

21       Not only did the FCC require written consent, but it also prescribed exactly what must be

22  contained in that written consent:  "[A] consumer's written consent to receive telemarketing

23  robocalls must be signed and be sufficient to show that the consumer: (1) received 'clear and

24  conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the

25  consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific

26  seller; and (2) having received this information, agrees unambiguously to receive such calls at a

27  telephone number the consumer designates."  *Id.* at ¶33.

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1    Knowing that its new rules would significantly impact how businesses telemarket to

2  wireless phones, the FCC left a 12-month window (the window was later enlarged by 8 more

3  months) for businesses to re-design websites, revise telemarketing scripts, and prepare and print

4  new credit card and loyalty program applications and response cards to obtain consent from new

5  customers, as well as to exhaust existing supplies of these materials and create new record-keeping

6  systems and procedures to store and access the new consents they obtained.  *Id.* at ¶67.  While the

7  FCC left a grace period, it also warned them:

8           Because allowing telemarketers to rely on [prior forms of consent] pending the
          effective date of our new written consent requirement would ease the operational
9           and technical transition for autodialed or prerecorded voice telemarketing calls, we
          find that it would serve the public interest to permit continued use of existing
10          consents for an interim period. For example, in cases where a telemarketer has not
          obtained prior written consent under our existing rules, we will allow such
11          telemarketer to make autodialed or prerecorded voice telemarketing calls until the
          effective date of our written consent requirement, so long as it has obtained another
12          form of prior express consent. ***Once our written consent rules become effective,
          however, an entity will no longer be able to rely on non-written forms of express
13          consent to make autodialed or prerecorded voice telemarketing calls, and thus
          could be liable for making such calls absent prior written consent***.

14

15  *Id.* ¶68 (emphasis added).

16    Plaintiff filed this Action on February 20, 2014 and alleged that TBS sent Plaintiff and the

17  Class unsolicited telemarketing text messages to their respective mobile phones from an ATDS,

18  and more importantly, without the required express written consent [Doc. 1]. *See* Declaration of

19  Nicholas Hornberger in Support of Unopposed Motion for Attorneys' Fees, Costs and Incentive

20  Award ("Hornberger Decl.") Hornberger Decl. at ¶2.  Thereafter, TBS moved this Court to stay, or

21  dismiss, this Action based upon various pending petitions for review before the FCC [Doc. 10]. *Id.*

22  This Court granted TBS's motion to stay on August 20, 2014 [Doc. 17]. *Id.*  As a result of this

23  Court's Order, and with both Parties fully aware as to the fact that any ruling by the FCC could

24  materially impact their respective positions in this case, the Parties opted to explore resolution of

25  this Action, and attended mediation with the Hon. Fred K. Morrison (Ret.) on March 24, 2015. *Id.*

26    Prior to mediation, the Parties exchanged significant information concerning the size of the

27  alleged class as well as information relating to Raze Media, the agent retained by TBS to send the

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1  messages on behalf of TBS. *Id.* at ¶3. At the mediation, the Parties reached an agreement to resolve

2  this Action.  Following mediation, the parties turned to finalizing the Settlement Agreement, claim

3  forms, notice documents, and preliminary approval papers.  *Id.*  Class Counsel worked in close

4  consultation with the Settlement Administrator throughout this process. *Id.*

5         Plaintiff submitted her *Unopposed* Motion for Preliminary Approval on June 11, 2015

6  [Doc. 24]. *Id.* at ¶4.  On or about July 1, 2015, this Court entered an Order requesting that the

7  parties submit supplemental briefing regarding the impact, if any, that the United States Supreme

8  Court's grant of *certiorari* in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) on the

9  Settlement [Doc. 26].  *Id.* On or about July 14, 2015, both Plaintiff and TBS filed supplemental

10  briefing in which both Plaintiff and TBS, respectively, asserted that *Gomez* would not have any

11  effect on the present case nor the Settlement and requesting the Court enter an order granting final

12  approval [Docs. 27 and 28]. *Id.* On or about July 29, 2015, the Court entered an order granting

13  preliminary approval, ordering notice be sent to the Settlement Class, setting an "opt out/exclusion"

14  deadline, setting a deadline for Class Counsel to submit a motion for attorneys' fees, costs, and

15  incentive awards, and setting a hearing date for final approval [Doc. 29]. *Id.*

16  **III.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS**
       **WELL SUPPORTED**
17

18         Pursuant to the Settlement Agreement, Class Counsel seek an award of $1,600,000.00 in

19  attorneys' fees and litigation expenses. *Id.* at ¶5.  This represents slightly less than 22% of the total

20  of the $7,335,00.00 Settlement Fund. *Id.* TBS does not oppose Class Counsel's application, and the

21  Court has preliminarily approved the award. *Id.*

22         Where counsel for a class seek fees from a common fund, courts generally calculate fees

23  using the "percentage-of-the-fund" wherein a Court awards attorneys' fees based upon a fair and

24  reasonable percentage of the overall value of the common fund. *Staton v. Boeing Co.*, 327 F.3d

25  938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002);

26  *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Here, under the percentage-of-

27  the-fund analysis, Class Counsel's request for fees is reasonable.

28
**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR**
**ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1   Recently, the Ninth Circuit confirmed fee award in *Resnick v. Frank (In re Online DVD-*

2   *Rental Antitrust Litig.)*, 779 F.3d 934 (9th Cir. 2015) (herein referred to as "*Netflix*").  In *Netflix*,

3   the Ninth Circuit approved an award of attorneys' fees to class counsel in the amount of 25% of the

4   common fund of $27,250,000.00 (which included notice, administration costs, and litigation

5   expenses) finding that the district court did not err in calculating the fee award as a percentage of

6   the total settlement fund even though the settlement fund was funded, in part, by gift cards.  *Id.* at

7   951 and 953.

8   Here, *Netflix* controls the calculation of the fee award in this action, and Plaintiff and the

9   Settlement Class respectfully request that the Court award attorneys' fees based on the percentage-

10  of-the-fund method.

11  **A.    Application of the Percentage-of-the-Fund Method is Warranted**

12  For decades, federal courts have recognized that when counsel's efforts result in the

13  creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an

14  equitable right to be compensated from that fund for their successful efforts in creating it. *See, e.g.*,

15  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has

16  recognized consistently that a litigant or a lawyer who recovers a common fund…is entitled to a

17  reasonable attorney's fee from the fund as a whole"); *In re Washington Public Power Supply*

18  *System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund

19  should share the wealth with the lawyers whose skill and effort helped create it"); *Vincent v.*

20  *Hughes Air West. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney,

21  whose efforts create, discover, increase or preserve a fund to which others also have a claim is

22  entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

23  The common fund doctrine rests on the premise that attorneys should normally be paid by

24  their clients. *See Boeing*, 444 U.S. at 478.  When clients do not pay an ongoing hourly fee to their

25  counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of

26  any recovery.

27

28

- 6 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

The percentage-of-the-fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by Class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'").

For these reasons, the percentage-of-the-fund method is overwhelmingly preferred by courts. *Theodore Eisenberg & Geoffrey P. Millery, Attorneys' Fees and Expenses in Class Action Settlements:* 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010).  An empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83% of cases employed the percentage-of the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6% from 1993-2002 to 9.6% from 2003 to 2008. *Id.* at 267-69; *accord Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and their Fee Awards*, 7 Journal of Empirical Legal Studies at p. 25 (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, nearly 69% of courts employed the percentage-of-the-settlement method, nearly 12% employed the lodestar method, and 20% did not report which method they used).

Here, the Settlement preliminarily approved by the Court establishes a $7,335,000.00 Settlement Fund.  Because Settlement Class members have not paid Class Counsel for its efforts, equity requires them to pay a fair and reasonable fee, based on what the market would traditionally require, which should be no less than if they hired private counsel to litigate their cases individually. *Boeing*, 444 U.S. at 479-81.

- 7 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

**B.      The Percentage-of-the-Fund Analysis Supports Class Counsel's Fee Request**

The benchmark for an attorneys' fee award in the Ninth Circuit is twenty-five percent (25%) of the common fund. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Courts, however, frequently award fees greater than the benchmark. *See, e.g., Vizcaino*, 290 F.3d at 1049-50; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000).[3] Indeed, courts have observed that, "in most common fund cases, the award exceeds that [25%] benchmark." *See, e.g., In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. 2007).

Here, however, Class Counsel is not seeking the 25% benchmark which would equate to $1,833,750.00 of the Settlement Fund (i.e., $7,355,000.00 x .25 = $1,833,750.00), plus costs; rather, Class Counsel is seeking $1,600,000 in attorneys' fees ***and*** costs combined, which represents approximately 21.8% of the Settlement Fund.

Courts in the Ninth Circuit have repeatedly awarded fees of 25% or more in cases where a common fund was created through a settlement. *Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010).[4] When examining fees, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.'" *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (*citing Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted)). "In looking at the circumstances of each case, relevant factors may include early settlement, achievement of an excellent result, risk,

---

[3] *See also In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).

[4] *See also Vizcaino*, 290 F.3d at 1048-50; *Garner v. State Farm*, 2010 WL 1687829 (N.D. Cal. 2010); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *10; *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989).

- 8 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1  and a showing of standard fees for similar litigation." *Wright*, 259 F.R.D. at 476-77 (*citing*

2  *Vizcaino*, 290 F.3d at 1048-50).

3        Each of these factors demonstrate that Class Counsel's request for $1,600,000.00 in

4  attorneys' fees and costs (21.8% of the Settlement Fund) is reasonable under the circumstances.

5  Class Counsel worked hard to achieve this result and this was only achieved after extensive

6  litigation, time, and expense.  After the lawsuit was filed, Class Counsel obtained significant

7  discovery from Plaintiff and TBS. *See* Hornberger Decl. at ¶6.  Class Counsel then spent numerous

8  hours analyzing the documents and placing them in the context of the litigation. *Id*. By working

9  hard to accomplish these tasks, and through lengthy and aggressive litigation, Class Counsel were

10  able to negotiate an efficient, favorable, and timely result for the Settlement Class Members. *Id*.

11                **1.**    ***Class Counsel Have Obtained an Excellent Result***

12        Class Counsel's experience and review of other similarly settled TCPA class cases dictate

13  the determination that Class Counsel has obtained an excellent settlement on behalf of the Class. *Id*.

14  at ¶7.  Class Counsel obtained a total payment by TBS of up to $7,335,000.00 out of which

15  Settlement Class members will receive their benefit.  What is significant about this settlement,

16  unlike most all other TCPA class settlements, is that all Class Members will receive their benefit

17  *without* the need to make an official claim. *Id*. Indeed, each Settlement Class Member will receive

18  the benefit by virtue of being a member of the Settlement Class.

19        The results Class Counsel have achieved are excellent by any measure.  *Hensley v.*

20  *Eckerhart*, 461 U.S. 424, 436 (1983) (results achieved most important factor in determining

21  appropriate fee award); *Vizcaino*, 290 F.3d at 1049; *Federal Judicial Center, Manual for Complex*

22  *Litigation*, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved

23  for class members").

24        The settlement requires a total payment by TBS of up to $7,335,000.00 – a substantial sum,

25  especially in a case involving no actual damages.  TCPA statutory damages are generally

26  considered to be similar to punitive damages designed to deter wrongful conduct, not compensatory

27  damages. *See, e.g., Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.*, 2009 WL 2602200, at *5 (D.

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1   N.J. 2009) (holding that the TCPA's statutory damages provisions are "a punitive element to deter

2   such conduct and motivate private lawsuits").

3         The fact that the $7,335,000.00 Settlement Fund does not constitute the full measure of

4   statutory damages potentially available to the Settlement Class does not merit any deviation from

5   the 25% benchmark. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

6   1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

7   expensive litigation that induce consensual settlements. The proposed settlement is not to be judged

8   against a hypothetical or speculative measure of what might have been achieved by the negotiators.

9   Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of

10  highest hopes.") (citations omitted).

11        First, courts regularly award a 25% fee or greater where the proportional recovery for the

12  class is far less than full where there were "actual," out-of-pocket damages.[5]   In contrast, the TCPA

13  provides for only statutory damages which bear no relationship to any actual economic harm

14  suffered by Class members. Second, while the TCPA provides a court with discretion to award "up

15  to $500" per violation, there is always a risk that the Court will not exercise its discretion to award

16  the full amounts potentially available.

17        While compensation is not the primary purpose of TCPA statutory damages, the award also

18  will compensate Class members for their claims.  Here, each Settlement Class member will be

19  directly issued (again, without the need to submit a claim) a twenty-five ($25.00) Gift Card for use

20  at any TBS retail location in the United States. The Gift Card is redeemable for any merchandise

21  offered for sale at any TBS U.S. retail location or online at www.thebodyshop-usa.com, and the

22  Gift Card is freely transferrable. *See* Hornberger Decl. at ¶7. Plaintiff submits that this amount

23  adequately compensates each member of the Settlement Class for the cell phone minutes and time

24

---

25  [5] *See, e.g., In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee where
    settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434

26  (E.D. Pa. 2001) (1/3 fee where settlement fund equaled about 11% of estimated damages); *In re Medical X-Ray Film
    Antitrust Litig.*, 1998 WL 661515, at *5, 7-8 (E.D.N.Y. 1998) (1/3 fee where recovery was 17% of damages); *In re*

27  *Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent fee where recovery was 10% of
    damages).

28
    **MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
    ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

they expended in reading and responding to each automated text message. *Cf. Goodrich Mgmt. Corp.*, 2009 WL 2602200, at *5 (noting in TCPA "junk fax" case that "actual out-of-pocket monetary loss to the recipient of an unwanted fax advertisement is slight, only the cost of a few sheets of paper and ink"). Class Counsel and Plaintiff respectfully submit that the Settlement here, requiring TBS to pay up to $7,335,000.00, fully serves the core purposes of the TCPA.

Therefore, the first factor weighs in favor of finding that the requested fee award is reasonable.

### 2. *The Excellent Results Achieved by Class Counsel Were the Product of Litigation*

Courts in the Ninth Circuit have repeatedly encouraged parties to achieve swift resolution of complex class actions. *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) is instructive. In *Pelletz* the parties engaged in a period of pre-filing investigation, informal discovery, and settlement discussions. *Id.* at 539. The parties' investigation there included the informal exchange of "confidential, proprietary information," and analysis of the allegedly defective product at issue. *Id.* at 543. The parties undertook these efforts over the course of just a year and a half. In reviewing the settlement there, the district court found that the pre-filing investigation, informal discovery, and settlement discussions provided "sufficient information to determine the relative strengths and weaknesses of their respective positions" such that "[b]oth sides were well-prepared to reach an adequate settlement and decide on appropriate remedies based on the strengths and weaknesses of their bargaining positions ascertained during the investigation." *Id.*

Here, as in *Pelletz*, before the lawsuit was filed, Class Counsel performed a thorough investigation of the claims of the Plaintiff and the Class which included conducting significant factual and legal research. *See* Hornberger Decl. at ¶6. Throughout this case Class Counsel obtained substantial discovery from TBS, including relevant information and documents such as internal documents which TBS would rely upon for any "prior express consent" or "prior express written consent" defense to the claims of Plaintiff and the Class. *Id.*

- 11 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1    Class Counsel also performed substantial legal research into the TCPA and various district

2    court and Circuit Court opinions interpreting the TCPA as well as relevant rule-making decisions

3    by the Federal Communications Commission ("FCC"). *Id*. Indeed, as a result of this Court's Order

4    Granting TBS's Motion to Stay, the parties were ordered to provide this Court with updates every

5    sixty (60) days regarding any FCC ruling that could impact the litigation of this action. *Id*.  During

6    this period – approximately August 20, 2014 through April 1, 2015 – the FCC was issuing as many

7    as sixty (60) responses to pending petitions each week. *Id*.  Thus, as a result, Class Counsel spent

8    upwards of ten (10) hours each week reviewing the responses issued by the FCC so as to identify

9    any response that might impact this litigation. *Id*.

10    Furthermore, after reaching the Settlement, Class Counsel obtained pages of confidential

11    and proprietary information from TBS and provided a number of questions to TBS which were

12    resolved by counsel during a number of post-settlement conference calls. *Id*.  Class Counsel also

13    requested and obtained confirmatory discovery necessary to reasonably confirm the terms of the

14    settlement and administrative plans and procedures for compliance with the terms of the

15    Settlement. *Id*.  Class Counsel also spent numerous hours researching and analyzing issues related

16    to notice to the Settlement Class and had numerous conference calls with TBS and the Claims

17    Administrator in order to confirm the agreed upon notice plan. *Id*. By working hard to accomplish

18    these tasks, Class Counsel were able to efficiently negotiate a favorable and timely result for the

19    Settlement Class.

20    As one Court has explained in calculating an appropriate fee, "counsel should be rewarded,

21    not punished" for helping to obtain a prompt settlement without running up lodestar through

22    needless litigation. *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52-53 (2000).

23    Moreover, the common fund doctrine "rests on the perception that persons who obtain the benefit

24    of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's

25    expense." *See Wright*, 259 F.R.D. at 477 (*quoting Van Gemert*, 444 U.S. at 478 (1980)). Thus,

26    "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately

27    compensate Class Counsel for the proposed settlement at an early stage in the litigation." *Id*.

28

- 12 -

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

Moreover, awarding Class Counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements. *In re Activision Sec. Litig.*, 723 F. Supp. at 1378 (approving fee awards that amount to 30% of the common fund in part because such a benchmark "will encourage Class Counsel to move for early settlement"); *In re Mego Fin. Corp.*, 213 F.3d at 459 (finding that Class Counsel's significant investigation and research supported approval of settlement, even absent extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); *In re Critical Path, Inc.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing").

Therefore, the second factor weighs in favor of finding that the requested fee award is reasonable.

### 3.    *Class Counsel Have Faced Substantial Risk of Non-Payment*

Class Counsel devoted substantial resources to the prosecution of this case with no guarantee they would be compensated for their time or reimbursed for their expenses.  To the contrary, payment of counsel's fees and expenses has always been contingent on a successful recovery of compensation. *See* Hornberger Decl. at ¶8.   Thus, there was a substantial risk of nonpayment. *Id*. TBS has also denied liability for the claims Plaintiff has asserted.  Even if Plaintiff and the Class were to ultimately prevail at trial, a result that is not guaranteed, they likely face a long and costly appeals process. *Id*.

### 4.    *Fees in Similar Actions*

Finally, Class Counsel's request is in line with fees requested in similar actions. *See* Hornberger Decl. at ¶¶9-14; *see also id*. at Exhs. 'A'-'F'.  Class Counsel has requested 21.8% of the Settlement Fund, an amount which is appreciably lower than the 25% benchmark in the Ninth Circuit, and which is an amount consistent with (and, in fact, less than) numerous fee awards issued by Courts in the Ninth Circuit in cases asserting similar TCPA claims. *See Adams v. AllianceOne*

- 13 -

*Receivables Management, Inc.*, Case No. 3:08-cv-00248 (S.D. Cal.) (awarding attorneys' fees in

the amount of 30% of common fund of $7,792,041); *Kramer v. Autobytel, Inc.*, Case No. 4:10-cv-

02722 (N.D. Cal.) (awarding attorneys' fees in the amount of 25% of common fund of

$12,200,000); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, Case No. 3:10-cv-01290

(S.D. Cal.) (awarding attorneys' fees in the amount of 22.5% of common fund of $17,078,324);

*Palmer v. Sprint Solutions, Inc.*, Case No. 2:09-cv-01211 (W.D. Wash.) (awarding attorneys' fees

in the amount of 28% of common fund of $5,500,000); *Robles v. Lucky Brand Dungarees, et al.*,

Case No. 3:10-cv-04846 (N.D. Cal.) (awarding attorneys' fees in the amount of 24.2% of common

fund of $9,900,000); *Steinfeld, et al. v. Discover Financial Services, et al.*, Case No. 3:12-cv-01118

(N.D. Cal.) (awarding attorneys' fees in the amount of 25% of common fund of $8,700,000).  *See*

Hornberger Decl. at ¶¶9-14; *see also id.* at Exhs. 'A'-'F'.

     In short, Class Counsel's fee request is reasonable under the "percentage of the fund"

method and under what has been awarded in similar TCPA litigation.  While the "percentage of the

fund" approach provides an independent ground for granting the fee request, a "cross-check" under

the lodestar method also demonstrates that Class Counsel's request is reasonable.  *See Manual for

Complex Litigation* ("*MCL*") 4th  § 12.121 (noting "[a] number of courts favor the lodestar as a

backup or cross-check on the percentage method when the fees might be excessive").

**C.**    **The Lodestar-Multiplier Cross-Check Confirms the Requested Attorneys' Fee
is Reasonable**

     The lodestar-multiplier method is more typically used in cases where there is no true

common fund, unlike the fund established in this case.  Class Counsel respectfully submits,

therefore, that the "percentage-of-the-fund" method best suits this case, and that they are entitled to

award on that basis.  *Hanlon*, 150 F.3d at 1029 (noting that lodestar method is used more often in

case where "there is no way to gauge the net value of the settlement or any percentage thereof.").  In

any event, the lodestar-multiplier method confirms the propriety of the requested fee here.[6]

---

[6] Like an award based on a percentage-of-the-fund, a fee award based upon a lodestar enhanced by a multiplier may be
paid from a common fund obtained on behalf of a class. *See Fischel v. Equitable Life. Asur. Soc'y.*, 307 F.3d 997,
1007-08 (9th Cir. 2002).

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029. Once this lodestar figure is determined, the Court may take into consideration additional factors to enhance the lodestar, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Hanlon*, 150 F.3d at 1029; *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *See Vizcaino*, 290 F.3d at 1051, n.6 (citing cases with multipliers ranging from 0.6 to 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was 6.85); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295, n.2 (9th Cir. 1994) (citations omitted).[7] Upward adjustments may be appropriate based on the results obtained, the quality of representation, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment. *MCL 4th § 14.122*, at 261.

### 1.    *Class Counsel's Lodestar is Reasonable*

Since the inception of this case nearly two (2) years ago, Class Counsel has incurred more than $542,640.00 in fees and expended $6,394.30 in litigation expenses related to the prosecution of this action. *See Hornberger Decl. at ¶¶15-16, and ¶26.* In all, Class counsel have devoted 998.3 hours to the investigation, development, litigation and resolution of this complex case. *Id.* This includes time spent investigating the claims of Plaintiff and the Settlement Class, conducting

---

[7] *See also, e.g., In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award of $71.2 million fund; cross-check multiplier of 19.6); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5-8.5); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,000,000 fund; multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. 1992) (25% of $72.5 million; multiplier of 6).

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1   discovery, researching and analyzing legal issues, propounding informal written discovery,

2   opposing TBS's Motion to Dismiss or Stay, reviewing and analyzing responses to pending FCC

3   petitions on a bi-weekly basis for nearly eight (8) months, engaging in settlement negotiations and

4   mediation, drafting the settlement agreement and accompanying notices, reviewing and analyzing

5   post-settlement discovery, formulating a notice plan with the Settlement Administrator, and

6   preparing the motion for preliminary approval. *Id.*

7          Class Counsel anticipates spending an additional fifty (50) hours seeing this case through its

8   final resolution which would include, but is not limited to, responding to inquiries from members of

9   the Settlement Class, drafting the final approval papers, and attending the final approval hearing.

10  *Id.* at ¶¶15-16.

11         Throughout this case, Class Counsel prosecuted the claims of Plaintiff and the Settlement

12  Class efficiently and effectively.  Knowing it was possible they would never be paid for their work,

13  Class Counsel had no incentive to act in a manner that was anything but economical.  *See Moreno*

14  *v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend

15  unnecessary time on contingency cases in the hope of inflating their fees. The payoff is too

16  uncertain, as to both the result and the amount of the fee.").  That said, Class Counsel took their

17  charge seriously and endeavored to represent the interests of the Class to the greatest extent

18  possible.

19         The lodestar calculations of Class Counsel are based on reasonable hourly rates.  Class

20  Counsel sets rates for attorneys based on a variety of factors, including, among others: (i) their

21  respective experience, skill and sophistication required for the types of legal services typically

22  performed; (ii) the rates customarily charged in the markets where legal services are typically

23  performed; and (iii) the experience, reputation and ability of the attorney. *See Hornberger Decl.* at

24  ¶17.  The hourly rates charged by the attorneys for work on this matter – Mr. Hornberger and Mr.

25  Verbiscar-Brown – are $800.00 and $450.00, respectively. *Id.* at ¶¶16-17.  These rates are

26  reasonable for the work performed in the communities by attorneys of similar skill, experience, and

27  reputation and are in line with comparable hourly rates charged by other law firms that handle class

28

1  action litigation in California. *Id*. at ¶17; *see also id*. at Exh. 'G'. In light of the detailed breakdown

2  provided by Class Counsel in the Declaration of Nicholas W. Hornberger, and the arguments

3  offered above, Class Counsel submit that their lodestar calculation is reasonable.

### 2.   *A Multiplier is Warranted*

5  The fee requested by Class Counsel reflects a multiplier of 2.95[8] on their total lodestar. *See*

6  Hornberger Decl. at ¶18. Such a multiplier is reasonable given the outstanding result Class

7  Counsel have achieved for the Settlement Class, the risks involved in taking the legal claims to

8  trial, and the complexity of the case. *See MCL 4th § 14.122*, at 261. The multiplier will be reduced

9  given that Class Counsel expects to expend an additional fifty (50) hours seeing this case through

10 its final resolution. *Id*. Furthermore, Class Counsel's requested multiplier falls well-within the

11 range of multipliers approved in a common fund case. *Id*. In light of this, Class Counsel's request

12 for a multiplier of 2.95 is reasonable.

### i.   <u>Class Counsel Achieved Exceptional Results for the Class</u>

14 Class Counsel has negotiated an excellent settlement for the Class. Ninth Circuit courts

15 have long recognized that the result obtained by Class Counsel is a principal factor in considering

16 an enhanced lodestar multiplier. *See, e.g., Kerr*, 526 F.2d at 70. As noted above, Class Counsel

17 obtained a settlement benefit to be directly issued to as close to 100% of the Settlement Class as is

18 possible under the circumstances. *See* Hornberger Decl. at ¶7. These excellent results support an

19 upward enhancement.

### ii.   <u>The Contingent Nature of This Case</u>

21 The public interest is served by rewarding attorneys who assume representation on a

22 contingent basis with an enhancement fee to compensate them for the risk they might be paid

23 nothing at all for their work. *In re Wash. Pub. Power*, 19 F.3d at 1299. Because Class Counsel

24 agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced

25 substantial risk should they proceed to trial. From the outset, prosecution of this action on behalf of

26 the Class has involved significant risk. In agreeing to represent Plaintiff and the Class on a

27
---
[8] The requested multiplier has been rounded to the nearest hundredth from 2.9485 to 2.95.

28
**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1  contingent basis, Class Counsel risked their own resources with no guarantee of recovery. *See*

2  Hornberger Decl. at ¶19.  The risk that Class Counsel could recover nothing in this case, on its

3  own, justifies a multiplier.

4           **iii.**    **The Novelty and Difficulty of Questions Involved**

5        The lodestar amount should be enhanced to account for the novelty and complexity of the

6  questions involved.  While Class Counsel was confident in their ability to succeed at class

7  certification and at trial, success was by no means guaranteed, especially considering TBS's

8  substantial opposition and the complexity of the issues involved.  The claims in this case involved

9  numerous issues of law that were complex and truly novel, as recognized by the Court in its Order

10  on TBS's Motion to Dismiss or Stay [Doc. 17]. Nonetheless, Class Counsel agreed to represent

11  Plaintiff and the Class and, through their skill and extraordinary effort, successfully overcame

12  formidable defenses to obtain excellent relief for the Class.  A multiplier is warranted under these

13  circumstances.  *See Vizcaino*, 290 F.3d at 1048 (affirming enhanced fee where counsel "pursued

14  this case in the absence of supporting precedents" and "against [defendant's] vigorous opposition

15  throughout the litigation").

16           **iv.**    **The Experience, Reputation and Ability of Counsel**

17        The reputation, experience, and ability of Class Counsel were essential to the success of this

18  litigation.  As noted in the accompanying Declaration of Nicholas W. Hornberger, Plaintiff and the

19  Class are represented by experienced counsel. *See* Hornberger Decl. at ¶¶20-24.  Class Counsel's

20  significant trial experience and decades of work in complex litigation were monumental in

21  developing the necessary factual and legal record for this case to be certified and eventually tried.

22  Class Counsel submits that its substantial experience, reputation, and skill in litigating and trying

23  complex matters was a significant factor in motivating TBS to mediate and eventually resolve this

24  Action.

25  / / /

26  / / /

27  / / /

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

**v.      Similar (and Greater) Multipliers Have Been Awarded in TCPA Class Actions in the Ninth Circuit**

Class Counsel's request for a 2.95 multiplier in this action is well-within the range of those applied by other district courts in the Ninth Circuit in similar class actions brought under the TCPA.  *See Adams v. AllianceOne Receivables Management, Inc.*, Case No. 3:08-cv-00248 (S.D. Cal.) (awarding attorneys' fees in the amount of 30% of common fund of $7,792,041, and applying a multiplier of 3.81 to counsel's lodestar of $708,660.00); *Kramer v. Autobytel, Inc.*, Case No. 4:10-cv-02722 (N.D. Cal.) (awarding attorneys' fees in the amount of 25% of common fund of $12,200,000, and applying a multiplier of 2.7 to counsel's lodestar of $1,129,629.00); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, Case No. 3:10-cv-01290 (S.D. Cal.) (awarding attorneys' fees in the amount of 22.5% of common fund of $17,078,324, and applying a multiplier of 5.16 to counsel's lodestar of $746,061.00); *Palmer v. Sprint Solutions, Inc.*, Case No. 2:09-cv-01211 (W.D. Wash.) (awarding attorneys' fees in the amount of 28% of common fund of $5,500,000, and applying a multiplier of 2.48 to counsel's lodestar of $621,000.00); *Robles v. Lucky Brand Dungarees, et al.*, Case No. 3:10-cv-04846 (N.D. Cal.) (awarding attorneys' fees in the amount of 24.2% of common fund of $9,900,000, and applying a multiplier of 2.73 to counsel's lodestar of $878,343.00); *Steinfeld, et al. v. Discover Financial Services, et al.*, Case No. 3:12-cv-01118 (N.D. Cal.) (awarding attorneys' fees in the amount of 25% of common fund of $8,700,000, and applying a multiplier of 3.05 to counsel's lodestar of $712,364); *see* Hornberger Decl. at ¶¶9-14; *see also id.* at Exhs. 'A'-'F'.

As is evident from the cases cited above, Class Counsel's request for a multiplier of 2.95, is well within the range of those applied by other district courts in the Ninth Circuit in other class actions brought under the TCPA.  Thus, the requested multiplier of 2.95 is reasonable.

**IV.      THE PAYMENT OF COSTS IS FAIR AND REASONABLE**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).  The

- 19 -

1    modest litigation expenses Class Counsel incurred in this case were necessary to secure the

2    resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-

3    1178 (S.D. Cal. 2007).

4         Here, Class Counsel seeks reimbursement for out-of-pocket litigation costs that include

5    filing fees, courier fees, delivery fees, mediation fees, and travel, meal, and lodging expenses.  *See*

6    Hornberger Decl. at ¶25. All in all, Class Counsel worked hard to bring this case to a successful

7    resolution in the face of a staunch defense, and the fees and costs payment provided for in the

8    Settlement is fair and reasonable.

9         **A.    Class Counsel's Expenses Were Reasonably Incurred**

10        Throughout the course of this litigation, Class Counsel incurred out-of-pocket costs totaling

11   $6,394.30 to date. *See* Hornberger Decl. at ¶25. The modest litigation expenses Class Counsel

12   incurred in this case include the following: (1) service fees; (2) filing fees; (3) travel, meal, and

13   lodging expenses; and (4) mediation fees.  *Id.*  Class Counsel put forward these out-of-pocket costs

14   without assurance that they would ever be paid. *Id.*  These out-of-pocket costs were necessary to

15   secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d

16   1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel

17   expenses, postage, telephone and fax costs, computerized legal research fees, and mediation

18   expenses are relevant and necessary expenses in a class action litigation).

19        The Class Notice informed Class Members that Class Counsel would seek a combined

20   award of fees and costs no greater than $1,600,000.00.  In light of the expenses Class Counsel has

21   had to incur to bring this case to its current settlement posture, Class Counsel's request for a total

22   award of $1,600,000.00, which includes $6,394.30 in costs, is reasonable.

23   **V.    THE REQUESTED INCENTIVE AWARD FOR PLAINTIFFS IS REASONABLE**

24        In addition, Class Counsel asks the Court to award incentive payments to Plaintiff in the

25   amount of $5,000.  TBS has agreed to pay these awards if approved. *See* Hornberger Decl. at ¶26.

26   As stated by the Court of Appeal in the *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380

27   (2010): incentive awards are "intended to compensate class representatives for work done on behalf

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1    of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

2    sometimes, to recognize their willingness to act as a private attorney general.'" Incentive awards

3    "are fairly typical in class action cases." *Id.* at 1394. California Federal Courts have found that

4    "incentive payments of $5,000 are presumptively reasonable." *See Faigman v. AT&T Mobility,*

5    *LLC,* 2011 WL 672648, at *5 (N.D. Cal. 2011); *see also Hopkins v. Hanesbrands, Inc.,* 2009 WL

6    928133, at *10 (N.D. Cal. 2009).

7        As set forth in the Declaration of Aimee L. Lambert ("Lambert Decl."), Plaintiff has spent

8    considerable time and effort in the prosecution of this action which included constant discussions

9    with counsel, reviewing pleadings, and reviewing the Settlement. *See* Lambert Decl. at ¶¶4-5.  In

10    addition, Plaintiff undertook service as a named plaintiff and proposed Class Representative in this

11    action knowing that she could be personally liable for an award of costs to TBS should a judgment

12    be entered in favor of TBS on the merits. *Id.* at ¶¶6-8; *Earley v. Superior Court,* 79 Cal.App.4th

13    1420, 1433-1434 (2000).  Few individuals are willing to undertake that risk, particularly since

14    courts have recently been entering judgments against class representatives. *See e.g. Whiteway v.*

15    *Fedex Kinkos Office & Print Services, Inc.,* 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007).

16    Lastly, Plaintiff placed herself in the potential position of being subject to adverse impact on future

17    business and employment opportunities because someone could run a background search, including

18    a search for court records, and conclude that Plaintiff is litigious and hold that false conclusion

19    against her.

20        Unlike unnamed class members, who are passive beneficiaries of the representatives'

21    efforts on their behalf, Plaintiff agreed to be the subject of discovery, including making herself

22    available as witnesses at deposition and trial, and subject herself to other obligations.  Small

23    enhancement payments, which serve as premiums in addition to any claims-based recovery from

24    the settlement, promote the public policy of encouraging individuals to undertake the responsibility

25    of representative lawsuits.

26    / / /

27    / / /

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**

1    In light of Plaintiff's effort and risk undertaken to obtain a meaningful result for the Class –

2    and the fact that no Class Member has objected to the incentive payment – Plaintiff requests that

3    the Court approve the payment of $5,000 to Plaintiff.

4    **VI.    THE CLASS RESPONSE TO DATE SUPPORTS APPROVAL OF THE FEE**

5    On or about August 10, 2015, the Claims Administrator sent Notice via email to

6    approximately 186,796 members of the Class. *See* Declaration of Tersea Y. Sutor of Heffler Claims

7    Group ("Sutor Decl.") at ¶10; *see id*. at Exh. 'B'. In addition, on or about August 28, 2015, the

8    Claims administrator sent Notice via mail to approximately 54,769 members of the Class. *Id*. at

9    ¶12; *see id*. at Exh. 'C'.  The Notice sent to members of the Class informed members of the Class

10    that Class Counsel would request a fee and cost award of up to $1,600,000.00 and that Plaintiff

11    would request an incentive award of $5,000.00.  *Id*. at Exhs. 'B' and 'C'.

12    To date, **zero** (0) Settlement Class members have excluded themselves from the Settlement.

13    *Id*. at ¶24  Moreover, to date, there are **zero** (0) objections to the Settlement whatsoever, let alone

14    any objection to the attorneys' fees and costs requests, or the incentive award request. *Id*.  That no

15    member of the Class has objected to the attorneys' fees and costs requests, or the incentive award

16    request supports the reasonableness of these requests.

17    **VII.    CONCLUSION**

18    For the reasons stated above, Plaintiffs respectfully request that this Court award the

19    requested class representative incentive payment and attorneys' fees and costs.  At the final

20    approval hearing, Class Counsel will address any remaining questions the Court may have.

21

22    DATED:  September 28, 2015                    HORNBERGER LAW CORPORATION

23

24                                                         By: /s/ Nathan Verbiscar-Brown
                                                              NATHAN VERBISCAR-BROWN, ESQ.
25                                                         CLASS COUNSEL

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *UNOPPOSED* MOTION FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**