EXHIBIT 'A'

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among Plaintiff Aimee Lambert ("Plaintiff"), individually and on behalf of the Settlement Class (as defined herein), and Defendant Buth-Na-Bodhaige, Inc. d/b/a The Body Shop ("TBS") (collectively, the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions of this Settlement Agreement and subject to the final approval of the Court.

## RECITALS

WHEREAS, on February 20, 2014, Plaintiff filed a putative class action Complaint in the United States District Court for the Eastern District of California, captioned *Lambert v. Buth-Na-Bodhaige, Inc., et al.*, Case No. 2:14-cv-00514-MCE-KJN (the "Action"), which asserted a single claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, based upon allegations that TBS and co-Defendant Raze Media, LLC ("Raze") sent marketing text messages to Plaintiff and the putative class using an automatic telephone dialing system ("ATDS") and without obtaining prior express consent.

WHEREAS, on May 30, 2014, TBS (joined by Raze) moved to dismiss or stay the Action, arguing that two threshold issues presented by Plaintiff's Complaint were raised in various petitions pending before the Federal Communications Commission ("FCC") and that the Action should be stayed or dismissed without prejudice pursuant to the primary jurisdiction doctrine in order to permit the FCC to address these issues in the first instance.

WHEREAS, on August 20, 2014, the Court entered an Order granting the foregoing motion and staying the Action pending further order of the Court.

WHEREAS, following the Court's August 20, 2014 Order, the Parties began to informally exchange information as to the circumstances surrounding the provision by Plaintiff and class members of mobile numbers to TBS, and the text marketing program at issue, including the relative participation of Raze in that program.

WHEREAS, the Parties also began to discuss the possibility of settlement, including multiple teleconferences wherein they discussed both the substantive issues of the case as well as their perspectives on a potential resolution of the claims at issue.

WHEREAS, on March 24, 2015, the Parties participated in an all-day, formal mediation session in San Francisco, California with the Honorable Fred K. Morrison (Ret.) of JAMS.  With Judge Morrison's guidance, the Parties engaged in numerous rounds of arm's-length negotiations throughout the course of the day.  By the end of the mediation session, the Parties had agreed to the material terms of this Agreement.

WHEREAS, Plaintiff believes that the alleged violations of the TCPA asserted in the Action have merit, and that she would have ultimately succeeded in obtaining certification of the proposed Settlement Class under Federal Rule of Civil Procedure 23, and in prevailing on the merits at summary judgment or at trial.  Nonetheless, Plaintiff and Class Counsel (as defined below) recognize that TBS has raised factual and legal defenses in the Action that present a risk that Plaintiff may not prevail, that a class might not be certified for trial, and/or that the claims of one or more class members may be defeated.  Plaintiff and Class Counsel also have taken into account the uncertainty and risks inherent in any litigation, especially in complex class action litigation.  Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Agreement.

WHEREAS, based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class, and that it is in the best interests of the Settlement Class members to settle the claims raised in the Action pursuant to the terms and conditions set forth in this Agreement.

WHEREAS, TBS has denied, and continues to deny, any wrongdoing or that the texts at issue violate the TCPA or any other statute or law.  In addition, TBS maintains that it has meritorious defenses to class certification on the merits of the claims alleged in the Action and is prepared to vigorously defend this suit.  Nevertheless, taking into account the uncertainty, risks, and inconvenience inherent in any litigation, TBS has concluded that further defense of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to fully and finally settle the claims raised in the Action pursuant to the terms and conditions set forth in this Agreement.

WHEREAS, the Parties agree that all Persons (as defined below) shall have an individual right to exclude themselves from the Settlement Class, such that participation in the relief provided by this Agreement (as defined below) shall be voluntary.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and TBS, by and through their respective counsel, that, subject to final approval of the Court after a hearing as provided for in this Settlement Agreement, and in consideration of the benefits flowing to the Parties from the Settlement Agreement set forth herein, the Action and the Released Claims shall be fully and finally compromised, settled, and

3

released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

**1.     DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1.     **"Action"** means the case captioned *Lambert v. Buth-Na-Bodhaige, Inc., et al.*, Case No. 2:14-cv-00514-MCE-KJN, pending in the United States District Court for the Eastern District of California.

1.2.     **"Class Counsel"** means Nicholas W. Hornberger and Nathan Verbiscar-Brown of Hornberger Law Corporation.

1.3.     **"Class Period"** means the four-year period beginning on February 20, 2010 and ending on February 20, 2014.

1.4.     **"Class Representative"** means the named Plaintiff in this Action, Aimee Lambert.

1.5.     **"Court"** means the United States District Court for the Eastern District of California, the Honorable Morrison C. England, Jr. presiding, or any judge who shall succeed him as judge in this Action.

1.6.     **"Effective Date"** means the first business day after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.7.     **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel, pursuant to Paragraph 8.1 and 8.2 herein.

1.8.   **"Final"** means one business day following the latest of the following events:  (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving this Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award and/or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.9.   **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, and the Court will determine the Fee Award and the incentive award to the Class Representative.

1.10.   **"Final Judgment"** means the Final Judgment and order(s) to be entered by the Court approving the Settlement Agreement and determining the Fee Award and the incentive award to the Class Representative.

1.11.   **"Gift Cards"** means electronic gift cards, in the amount of twenty five dollars and no cents ($25.00) redeemable for any merchandise offered for sale at any U.S. retail location of The Body Shop or online at www.thebodyshop-usa.com, which shall be freely transferrable and shall not expire.

1.12.   **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the

manner set forth in this Agreement, fulfills the requirements of Due Process and Federal Rule of Civil Procedure 23, and is substantially in the form of Exhibits A and B attached hereto.

1.13. **"Notice Date"** means the date by which notice is complete, which shall be a date no later than thirty (30) days after entry of Preliminary Approval.

1.14. **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be postmarked and/or filed with the Court, which shall be designated as a date no later than forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

1.15. **"Parties"** means Plaintiff and the Settlement Class, on the one hand, and TBS on the other.

1.16. **"Person"** shall mean, without limitation, any individual and their spouses, heirs, predecessors, successors, representatives, and assigns.

1.17. **"Plaintiffs"** means Plaintiff Aimee Lambert and the Settlement Class Members, for purposes of this settlement only.

1.18. **"Preliminary Approval"** means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and approving the form of the Notice.

1.19. **"Preliminary Approval Order"** means the proposed order preliminarily approving the Agreement and directing Notice to the Settlement Class, to be submitted to the Court in conjunction with Plaintiff's motion for preliminary approval of the Agreement.

1.20. **"Raze"** means Defendant Raze Media, LLC.

1.21. **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands,

6

liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged receipt of text messages sent by or on behalf of TBS during the Class Period, including all claims that were brought or could have been brought in the Action, belonging to any and all Releasing Parties.

1.22.   **"Released Parties"** means TBS and Raze, as well as any and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies, employers, employees, consultants, independent contractors, vendors, subvendors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, companies, firms, trusts, and corporations.

1.23.   **"Releasing Parties"** means Plaintiffs and their respective present or past heirs, executors, estates, administrators, assigns, parents, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, partners, attorneys, any other representatives of any of these Persons and entities, and any other Persons or entities that

7

subscribe to wireless telecommunications services on Plaintiffs' behalf or that share a mobile phone number with Plaintiffs.

1.24.    **"Settlement Administration Expenses"** means the expenses reasonably incurred by or on behalf of the Settlement Administrator in administering the Settlement, including expenses relating to identifying the members of the Settlement Class, providing Notice, and mailing Gift Cards, as well as any expenses reasonably incurred in the sending of notice to the relevant governmental agencies pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").

1.25.    **"Settlement Administrator"** means Heffler Claims Group LLC, selected by the Parties and approved by the Court, which shall provide Notice to the Settlement Class and distribute Gift Cards as set forth in this Agreement.

1.26.    **"Settlement Benefits**" means the approximately $7,335,000 in benefits provided to Settlement Class Members by TBS under this Settlement Agreement, and shall include: the Gift Card to which each Settlement Class Member is entitled according to the terms of this Agreement, estimated to have a combined valued in excess of $5,600,000; an award of attorneys' fees and costs not to exceed $1,600,000; an incentive award to the Class Representative in the amount of $5,000; and the Settlement Administrative Expenses, estimated to be $130,000.

1.27.    **"Settlement Class"** means all individuals in the United States who received a text message sent by or on behalf of TBS during the Class Period, as reflected by the combined records of Raze and TBS.

1.28.    **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

The total number of Settlement Class Members is estimated at 225,252, not including any Person who may submit a valid request for exclusion.

1.29. **"TBS"** means Defendant Buth-Na-Bodhaige, Inc. d/b/a The Body Shop.

1.30. **"TBS' Counsel"** means Michael J. Stortz and Matthew J. Adler of Drinker Biddle & Reath LLP.

1.31. **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

9

2.      **SETTLEMENT CLASS MEMBER BENEFIT.**

    2.1.    **Gift Cards to Settlement Class Members.**

        (a)      Within ten (10) days after the Effective Date, the Settlement Administrator shall establish and follow a procedure agreeable to the Parties to ensure the secure and proper distribution of Gift Cards to Settlement Class Members.

        (b)      Within thirty (30) days after the Effective Date, TBS shall provide to the Settlement Administrator a sufficient number of fully-funded Gift Cards to be distributed to the Settlement Class Members from the Settlement Benefits.

        (c)      Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall distribute Gift Cards in accordance with the procedure established under Paragraph 2.1(a).

    2.2.    **Settlement Administration Expenses.**

        (a)      TBS shall pay all Settlement Administration Expenses (estimated to be $130,000) from the Settlement Benefits pursuant to invoices from the Settlement Administrator.  Any Settlement Administration Expenses beyond $130,000 shall be paid directly by TBS without reference to the Settlement Benefit.

3.      **RELEASE**

    3.1.    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

    3.2.    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against each and every one of the Released Parties.

10

3.3.    This Settlement Agreement does not release, resolve or otherwise affect any claims that TBS may have against Raze and/or Raze's subvendor, 3Cinteractive, LLC.

**4.     NOTICE TO THE CLASS.**

4.1.    Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice describing the Final Approval Hearing and the terms of the compromise embodied in this Settlement Agreement to be disseminated to the Settlement Class as provided herein.  Such notice shall comport with due process and Rule 23, the costs of which shall be Settlement Administration Expenses.

4.2.    The Notice shall include:

(a)     *Direct Email Notice.*  No later than thirty (30) days after the entry of Preliminary Approval, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit A to all persons in the Settlement Class for whom a valid email address is obtainable with reasonable effort from TBS' customer records.

(b)     *Direct Mail Notice.*  For persons in the Settlement Class for whom a valid email address is not obtainable with reasonable effort from TBS' customer records, the Settlement Administrator shall send Notice via First Class U.S. Mail through a postcard notice substantially in the form attached as Exhibit A to the most recent physical address for such persons that is obtainable with reasonable effort from TBS' customer records. To the extent TBS' customer records contain only a mobile telephone number for such persons, reasonable effort to obtain a physical address shall include the use of "reverse lookup" procedures as available to the Settlement Administrator.  The Notice set forth in

11

this paragraph shall be sent no later than thirty (30) days after the entry of Preliminary Approval.

(c)     *Website.*  Within twenty-one (21) days after the entry of Preliminary Approval, the Settlement Administrator will develop, host, administer and maintain a dedicated settlement website.  The Notice on the settlement website shall be substantially in the form of Exhibit B attached hereto.

(d)     *Targeted Publication Notice.*  Within fifteen (15) days after the entry of Preliminary Approval, the Settlement Administrator will implement a targeted publication notice program consisting of internet banner notifications in various social media outlets that are specifically targeted to reach TBS customers.  Such internet banner notifications will be published for a period of thirty (30) days and will direct the recipient to a dedicated settlement website.

(e)     *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, TBS shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

4.3.    The Notice shall advise the Settlement Class of their rights under the Settlement, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms.  The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if the Person making an objection shall, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, file notice of

his or her intention to do so and at the same time (a) file copies of such papers he or she proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) file copies of such papers through the Court's CM/ECF system if the objection is from a Settlement Class Member represented by counsel, and (c) send copies of such papers via mail, hand, or overnight delivery service to both Class Counsel and TBS' Counsel.

4.4.    Any member of the Settlement Class who intends to object to this Settlement Agreement must include his or her name and address, include all arguments, citations, and evidence supporting the objection (including copies of any documents relied on), state that he or she is a Settlement Class Member, provide the cellular phone number on which he or she allegedly received a text message, and provide a statement whether the objector intends to appear at the Final Approval Hearing, with or without counsel, accompanied by the signature of the objecting Settlement Class Member.  Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Paragraph and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.5.    A member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked on or before the Objection/Exclusion deadline, which must be personally signed by the Settlement Class Member seeking to be excluded from the Settlement Class, and include his

13

or her name and address, the cellular telephone number on which he or she allegedly received a text message, the caption for the Action (i.e., *Lambert v. Buth-Na-Bodhaige, Inc., et al.*, Case No. 2:14-cv-00514-MCE-KJN (E.D. Cal.)), and a statement that he or she wishes to be excluded from the Settlement Class.  A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Persons serving such a request shall be deemed to remain members of the Settlement Class and shall be bound as Settlement Class Members by this Settlement Agreement, if approved.  Any member of the Settlement Class who elects to be excluded shall not: (1) be bound by any orders or the Final Judgment; (2) be entitled to relief under this Settlement Agreement; (3) gain any rights by virtue of this Settlement Agreement; nor (4) be entitled to object to any aspect of this Settlement Agreement.  "Mass" or "class" requests for exclusion shall not be allowed.

**5.     SETTLEMENT ADMINISTRATION.**

     5.1.     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and TBS' Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and TBS' Counsel with information concerning Notice, administration and implementation of the Settlement Agreement.  Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court

summarizing the work performed by the Settlement Administrator.  Without limiting the foregoing, the Settlement Administrator shall:

   (a)   Receive exclusion forms and other requests from the Settlement Class and promptly provide a copy of such requests to Class Counsel and TBS' Counsel upon receipt ("the Opt-Out List").  If the Settlement Administrator receives any exclusion forms or other requests from the Settlement Class after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and TBS' Counsel;

   (b)   Provide weekly reports to Class Counsel and TBS' Counsel, including without limitation, reports regarding the number of opt-outs and objections received; and

   (c)   Make available for inspection by Class Counsel and TBS' Counsel any correspondence received by the Settlement Administrator at any time upon reasonable notice.

   5.2.   In the exercise of their duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

   5.3.   The Final Approval Hearing shall be set for a date no less than ninety (90) days after the Notice described in Paragraph 4.2 is disseminated.

   5.4.   The Settlement Administrator and Class Counsel shall keep all personal information, including the identity, telephone numbers, email addresses, and U.S. mailing addresses of the Settlement Class strictly confidential in accordance with applicable law and confidentiality agreements that they shall execute or have already executed.  The Parties agree

that this information may not be used for any purpose other than effectuating the terms of this Agreement or the duties or obligations arising hereunder.

**6.      TERMINATION OF SETTLEMENT.**

      6.1.    **Termination By Any Party.**  Subject to Paragraph 9 below, the Class Representative, on behalf of the Settlement Class, or TBS, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so to all other Parties hereto within ten (10) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court; or (v) the date upon which an Alternative Judgment, as defined in Paragraph 9.1(d) of this Agreement, is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court.

**7.      PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.**

      7.1.    Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for entry of an Order of Preliminary Approval of the settlement set forth in this Agreement, which shall include, among other provisions, a request that the Court:

            (a)    appoint Plaintiff Aimee Lambert as representative of the Settlement Class;

            (b)    appoint Class Counsel to represent the Settlement Class;

(c)     certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only and without prejudice to TBS' right to contest class certification if this Agreement is not approved;

(d)     preliminarily approve this Agreement for purposes of disseminating notice to the Settlement Class;

(e)     approve the form and contents of the Settlement Class Notice for dissemination to the Settlement Class, as well as the method of its dissemination to members of the Settlement Class;

(f)     schedule a Final Approval Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and reimbursement of expenses and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for the Fee Award and an incentive award to the Class Representative, and dismissing the Action with prejudice.

7.2.    After Notice to the Settlement Class is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

(a)     find that it has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

(b)     approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement

17

Agreement according to its terms and conditions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members and Releasing Parties;

(c)     find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

(d)     find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

(e)     dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement;

(f)     incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

(g)     permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting,

18

intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all Exhibits to this Agreement) that (1) shall be consistent in all material respects with the Final Judgment, and (2) do not limit the rights of Settlement Class Members;

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(j)     incorporate any other provisions, consistent with the material terms of this Agreement, as the Court deems necessary and just.

## 8.     CLASS COUNSEL'S ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD.

8.1.     Class Counsel will apply to the Court not more than 30 days after the Notice Date for an award of reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award.  The amount of the Fee Award shall be determined by the Court based on a petition from Class Counsel.  Class Counsel has agreed, with no consideration from TBS, to limit their request for the Fee Award to $1.6 million ($1,600,000.00), and TBS shall not oppose a request up to this amount.

8.2.     TBS shall pay Class Counsel the Fee Award from the Settlement Benefits, in the amount approved by the Court, within thirty (30) days after the Effective Date, provided that Class Counsel has given TBS a completed copy of an IRS Form W-9 in advance.  Payment of

the Fee Award shall be made via wire transfer to an account designated by Class Counsel after providing necessary information for electronic transfer.  Following payment, TBS shall provide Class Counsel with a completed copy of an IRS Form 1099-MISC.

      8.3.    In recognition of the time and effort she expended on behalf of the Settlement Class, subject to the Court's approval, the Class Representative shall be paid an incentive award from the Settlement Benefits in the total amount of five thousand dollars ($5,000).

      8.4.    TBS shall pay the Class Representative the incentive award, as determined by the Court, within thirty (30) days after the Effective Date, provided that the Class Representative has given TBS a completed copy of an IRS Form W-9 in advance.  Payment of the incentive award to the Class Representative shall be made via check to the Class Representative, such check to be sent care of Class Counsel.  Following payment, TBS shall provide the Class Representative with a completed copy of an IRS Form 1099-MISC, with such form to be sent care of Class Counsel.

**9.      CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

      9.1.    The Effective Date of this Settlement Agreement shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs:

      (a)    This Agreement has been signed by the Parties, Class Counsel and TBS' Counsel;

      (b)    The Court has entered an order granting Preliminary Approval of the Agreement;

      (c)    The Court has entered an order finally approving the Settlement Agreement, following notice to the Settlement Class and a Final Approval Hearing, as

provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment substantially consistent with this Agreement; and

(d)      The Final Judgment has become Final, as defined above, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") to which the Parties have consented, that Alternative Judgment has become Final.

9.2.      If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3, unless Class Counsel and TBS' Counsel mutually agree in writing to proceed with this Agreement.  If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all other Parties.  Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the incentive award to the Class Representative, regardless of the amounts awarded, shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

9.3.      If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1, 9.1, or 9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into and, pursuant to

Paragraph 10.4 below, this Agreement shall not be used for any purpose whatsoever against any of the Parties.

**10.    MISCELLANEOUS PROVISIONS.**

10.1.    The Parties: (1) acknowledge that it is their intent to consummate this Settlement Agreement; and (2) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and TBS' Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval of this Agreement and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

10.2.    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by TBS, or each or any of them, in bad faith or without a reasonable basis.

10.3.    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released.  The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

22

10.4.    Whether the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)    is, may be deemed, or shall be used, offered or received against TBS as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)    is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by TBS, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other

tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Moreover, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

(e)     is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f)     is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.5.    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6.    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

24

10.7.   All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

10.8.   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.9.   Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.10.  Plaintiff represents and warrants that he has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that he is fully entitled to release the same.

10.11.  Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.12.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A

complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.13.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.14.  This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the conflicts of laws provisions thereof.

10.15.  This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

10.16.  Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

| If to Plaintiff's Counsel: | If to TBS' Counsel: |
| --- | --- |
| Nicholas C. Hornberger | Michael J. Stortz |
| Hornberger Law Corporation | Drinker Biddle & Reath LLP |
| 633 W. Fifth Street, 28th Floor | 50 Fremont St., 20th Floor |
| Los Angeles, CA 90071 | San Francisco, CA 94105 |

[SIGNATURES APPEAR ON FOLLOWING PAGE.]

26

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

Dated: 6/8/15

**AIMEE LAMBERT**, individually and on behalf of the Settlement Class,

By _____

**HORNBERGER LAW CORPORATION**
Attorneys for Plaintiff Aimee Lambert

Dated: 6/8/15

By: _____
    Nicholas C. Hornberger, Esq.

Dated: _____

**BUTH-NA-BODHAIGE, INC.**

By: _____

Its: _____

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Buth-Na-Bodhaige, Inc.

Dated: _____

By: _____
    Michael J. Stortz, Esq.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys.

**AIMEE LAMBERT**, individually and on behalf of the Settlement Class,

Dated: _____

By: _____

**HORNBERGER LAW CORPORATION**
Attorneys for Plaintiff Aimee Lambert

Dated: _____

By: _____
        Nicholas C. Hornberger, Esq.

Dated: 6/10/15

**BUTH-NA-BODHAIGE, INC.**

By: _____

Its: _____
        President

**DRINKER BIDDLE & REATH LLP**
Attorneys for Defendant Buth-Na-Bodhaige, Inc.

Dated: 6/10/15

By: _____
        Michael J. Stortz, Esq.

26